# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BILAL AHDOM,<br><br>        Plaintiff,<br><br>    v.<br><br>DR. ENENMOH, et al.,<br><br>        Defendants. | Case No. 1:10-cv-00816-AWI-SAB<br><br>ORDER DISMISSING COMPLAINT, WITH LEAVE TO AMEND, FOR FAILURE TO STATE A CLAIM<br><br>ECF NO. 1<br><br>THIRTY (30) DAY DEADLINE |

## I.

## INTRODUCTION

Plaintiff Bilal Ahdom ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983 and the American with Disabilities Act. For the reasons set forth below the Court finds that Plaintiff's complaint fails to state any cognizable claims and will dismiss Plaintiff's complaint with leave to amend.

## II.

## SCREENING

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that

1

"seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

### III.

### COMPLAINT ALLEGATIONS

Plaintiff names Gail Martinez (health care manager), Dr. Enenmoh (chief medical officer), Dr. J. Metts (medical doctor), T.R. Byers (physician's assistant), Guitierrez (registered nurse), Marlene Komar (licensed vocational nurse), J. Prudhomme (associate warden, health care operations), Babb (sergeant) and the California Department of Corrections and Rehabilitation ("CDCR") as defendants in this action.[1] (Compl. ¶¶ 3-12.)

Plaintiff alleges that he was transported from "KVSP" to "CSATF" on November 4, 2009. (Compl. ¶ 13.) At the time, Plaintiff was receiving 50 mg of Fentanyl every 48 hours for pain management pursuant to the treatment plan of "neurosurgeon Rashidi." (Compl. ¶ 13.)

---

[1] CDCR is sued in its official capacity for the purposes of obtaining injunctive relief. All other defendants are sued in their individual capacities.

On November 6, 2009, Defendant Komar retrieved crushed medication, which Plaintiff characterizes as "contaminated." (Compl. ¶ 14.) Plaintiff alleges that Komar placed the "contaminated" crushed medication with other non-contaminated medications in a cup and denied Plaintiff's requests for a "non-contaminated" dose. (Compl. ¶ 14.) Komar further told Plaintiff that his Fentanyl prescription was "restricted to CTC" and could not be issued "on the yard." (Compl. ¶ 14.) Plaintiff then told Komar that he was in severe pain and requested permission to go to CTC, but Plaintiff's request was denied. (Compl. ¶ 14.)

On November 10, 2009, Plaintiff informed medical staff that he was in severe pain and needed the Fentanyl provided at CTC. (Compl. ¶ 15.) Defendant Guitierrez denied Plaintiff's request. (Compl. ¶ 15.) Plaintiff alleges that his counselor "CCI Rocha," observed Plaintiff's condition and offered assistance with getting Plaintiff to CTC, but to no avail. (Compl. ¶ 16.)

On November 12, 2009, Defendant J. Metts prescribed Plaintiff 15mg of morphine tablets taken three times daily. (Compl. ¶ 17.)

On November 19, 2009, Plaintiff saw his neurosurgeon, Dr. Rashidi, who forwarded a treatment plan to CSATF medical staff which included "ADA accommodations" such as a special toilet seat, bed rails and 24 hour access to a wheel chair. (Compl. ¶ 18.) The treatment plan also included reinstatement of Plaintiff's Fentanyl for pain management and a return visit to see Dr. Rashidi in two months. (Compl. ¶ 18.)

On November 23, 2009, Plaintiff saw Defendant Metts and informed him that he was experiencing severe pain and that he was previously receiving Fentanyl narcotic patches prescribed by Dr. Rashidi. (Compl. ¶ 19.) Metts informed Plaintiff that Fentanyl was available at CTC, but denied Plaintiff's request for immediate treatment at CTC. (Compl. ¶ 19.) Metts also discontinued Plaintiff's morphine prescription. (Compl. ¶ 19.)

On November 25, 2009, Plaintiff met with Defendant Byers and requested immediate treatment and ADA accommodations for his severe pain. (Compl. ¶ 20.) Plaintiff describes Byers as an "ADA physician assistant." (Compl. ¶ 20.) Byers documented Plaintiff's request and told Plaintiff that medication requests are not ADA issues. (Compl. ¶ 20.) Byers did document Plaintiff's request for a "1845 evaluation – DPW classification and work limit eval" but denied

Plaintiff's requests for immediate treatment. (Compl. ¶ 20.)

On December 3, 2009, Plaintiff met with Metts and again requested Fentanyl and ADA accommodations. (Compl. ¶ 21.) "Metts documented Fentanyl was not available" and "made order request" for toilet seat rails and bed rails. (Compl. ¶ 21.) However, Metts denied the request for Fentanyl narcotic patches, 24 hour wheel chair use and "2 month return visit." (Compl. ¶ 21.) Plaintiff alleges that Metts discussed Plaintiff's treatment plan with Defendants Dr. Enenmoh and Dr. Martinez. (Compl. ¶ 22.) Plaintiff contends that Enenmoh and Martinez rejected Dr. Rashidi's treatment plan, including the reinstatement of Fentanyl and the provision of toilet seat rails, bed rails, 24 hour wheelchair use and a "2 month return visit." (Compl. ¶ 22.)

On December 8, 2009, Defendant Babb denied Plaintiff "wheelchair transportation to physical therapy because Plaintiff was classified DPPV DPO." (Compl. ¶ 23.) Plaintiff does not explain what "DPPV DPO" means. Plaintiff told Babb that he was unable to stand or walk on his own and that Plaintiff "was refusing to leave the safety of his wheelchair." (Compl. ¶ 23.) Plaintiff filed an "1824 ADA accommodations request form" for 24 hour wheelchair access and wheelchair transportation to outside medical programs, but the request was denied on December 11, 2009 by Defendant Martinez. (Compl. ¶¶ 24-25.) Plaintiff contends that Martinez "intentionally classified Plaintiff DPO in error." (Compl. ¶ 25.)

On December 11, 2009 Plaintiff was "denied the benefits of ADA Physical Therapy when he was denied transportation (wheelchair) to his P.T. session." (Compl. ¶ 26.)

On December 15, 2009, Motts signed a "medication reconciliation order stopping Plaintiff's pain management (50 mg Fentanyl Patch)." (Compl. ¶ 27.)

On December 19, 2009, Plaintiff informed Defendant Komar that he was in severe pain, but Plaintiff's request for "pain management services" was denied. (Compl. ¶ 29.)

On December 29, 2009, Plaintiff was denied wheelchair transportation to his physical therapy session. (Compl. ¶ 30.) On December 30, 2009, Byers met with Plaintiff and denied his requests for accommodations such as bed bars, toilet seat, "effective" pain management, twenty-four hour wheelchair access and wheelchair transportation to outside services and appointments. (Compl. ¶ 31.)

On January 5, 2010, Motts signed an order prescribing morphine tablets for Plaintiff. (Compl. ¶ 32.) The prescription expired on April 1, 2010 and restarted on April 6, 2010. (Compl. ¶ 33.) On April 14, 2010, Metts revoked Plaintiff's morphine prescription and changed Plaintiff's pain management medication to a crushed medication after he received a false report that Plaintiff was charged with possession of morphine in the dining area. (Compl. ¶ 34.)

On April 20, 2010, Plaintiff informed Metts that he was in severe pain and that his pain management was inadequate. (Compl. ¶ 35.) Plaintiff requested reinstatement of his non-crushed morphine prescription but Metts denied the request. (Compl. ¶ 35.)

On April 20, 2010, Metts reduced Plaintiff's morphine prescription because Plaintiff "violated a 3 consecutive day non-retrieval of medications rule." (Compl. ¶ 36.)

## IV.

## DISCUSSION

### A. Eighth Amendment Deliberate Indifference Claims

Plaintiff raises claims under Section 1983 for the violation of the Eighth Amendment's prohibition against cruel and unusual punishments. To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). A prisoner's claim does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'" Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)). In order to find a prison official liable under the Eighth Amendment for denying humane conditions of confinement within a prison, the official must know "that inmates face a substantial risk of serious harm and disregard[] that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994).

To maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show (1) a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain, and (2)

a deliberately indifferent response by defendant. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). The deliberate indifference standard is met by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Id.

Plaintiff's claims revolve around Plaintiff's allegation that medical personnel at CSATF did not provide Plaintiff with the type of medication and accommodations requested by Plaintiff. However, the Eighth Amendment does not grant Plaintiff the right to receive the type of medical treatment and accommodations of his choosing. In cases involving alternative treatment options, conduct only rises to the level of an Eighth Amendment violation if the course of treatment chosen by Plaintiff's doctors was medically unacceptable under the circumstances and was chosen by the doctors in conscious disregard of an excessive risk to Plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Here, Plaintiff does not allege facts that plausibly support the conclusion that the treatment afforded to him was "medically unacceptable under the circumstances." Plaintiff's complaint demonstrates that he was seen by doctors on a regular basis. Plaintiff further alleges that he was given pain medication (morphine), just not the specific type of pain medication Plaintiff preferred (Fentanyl).

Moreover, Plaintiff's Eighth Amendment claims fail because there is no indication that Plaintiff's doctors acted in conscious disregard toward an excessive risk to Plaintiff's health. Again, Plaintiff was seen by doctors on a regular basis and was given prescription pain medication. Plaintiff alleges that his morphine prescription was changed from tablet form to crushed form at one point in time, but this appears to be due to reports that suggested that Plaintiff was smuggling his tablets into other areas of the prison instead of taking them himself.[2] Similarly, Plaintiff's dosage was reduced when doctors received information that Plaintiff was not retrieving his medication.[3] Plaintiff fails to allege facts which plausibly support the conclusion

---

[2] Plaintiff alleges that these reports were false but, notably, there is no indication that Plaintiff's doctors believed that the reports were false. Accordingly, even accepting Plaintiff's allegations as true, there is no suggestion that Plaintiff's doctors acted out of malice or in conscious disregard toward an excessive risk to Plaintiff.

[3] It is worth noting that Plaintiff's refusal to retrieve his pain medication in crushed form likely lead his doctors to believe that Plaintiff did not actually need pain medication but instead sought tablet pain medication for purposes of smuggling them into the prison population.

that his doctors acted in conscious disregard to an excessive risk to Plaintiff's health by prescribing crushed morphine for Plaintiff's pain instead of the pain medication demanded by Plaintiff.

Plaintiff also alleges that his requests for "ADA accommodations" such as toilet rails, bed rails, 24 hour wheel chair access, wheelchair transportation and "2 month return visit" to Dr. Rashidi were all denied by various prison officials. These allegations fail to rise to the level of an Eighth Amendment violation. Plaintiff fails to allege facts that plausibly support the conclusion that he was exposed to a substantial risk of serious harm because these requests were denied. Moreover, Plaintiff fails to allege facts that plausibly support the conclusion that the defendants who denied these requests did so in conscious disregard to an excessive risk to Plaintiff's health. At most, Plaintiff alleges that he missed a few physical therapy sessions because he could not or would not get out of his wheelchair. These isolated incidents do not rise to the level of an Eighth Amendment violation. See McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds by, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (1997) (isolated occurrences of neglect to a prisoner's condition does not constitute deliberate indifference). Plaintiff fails to state any claims for the violation of his rights under the Eighth Amendment.

### B. Americans with Disabilities Act Claims

Title II of the ADA "prohibit[s] discrimination on the basis of disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II of the ADA applies to inmates within state prisons. Pennsylvania Dept. of Corrections v. Yeskey, 524 U.S. 206, 210 (1998); see also Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997); Duffy v. Riveland, 98 F.3d 447, 453-56 (9th Cir. 1996). In order to state a claim of disability discrimination under Title II, Plaintiff must allege four elements: (1) that Plaintiff is an individual with a disability; (2) that Plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) that Plaintiff was either excluded from participation in or denied the

7

benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of Plaintiff's disability.  Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (citing Weinrecih v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997).

Plaintiff does not allege that he suffers from any specific disability, but does allege that he uses a wheelchair.  Even assuming Plaintiff does qualify as an individual with a disability, Plaintiff's ADA claims fail because Plaintiff fails to allege that he was denied benefits by reason of his disability.  At most, Plaintiff alleges that he was not given requested treatment and accommodation for his alleged disability.  However, claims of inadequate or negligent medical care are not cognizable under the ADA.  Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1022 (9th Cir. 2010).  Plaintiff does not allege that he was discriminated against by reason of his disability.  In fact, Plaintiff's factual allegations suggest that prison officials did not believe Plaintiff suffered from a disability or required the use of a wheelchair 24 hours a day.  Accordingly, Plaintiff fails to state any cognizable ADA claims.

### C. State Law Claims

Plaintiff's complaint raises claims under state law.  However, since the Court finds that Plaintiff's complaint fails to state any federal claims, the Court will decline to address Plaintiff's state law claims.  Unless Plaintiff's amends his federal claims and can allege facts to cure the deficiencies in his federal claims, the Court will not exercise jurisdiction over Plaintiff's remaining state law claims.  See Carnegie-Melon University v. Cohill, 484 U.S. 343, 350 n. 7 (1988).

## V.

## CONCLUSION AND ORDER

For the reasons stated, Plaintiff's complaint does not state a cognizable claim for relief for a violation of his constitutional rights.  Plaintiff is granted leave to file an amended complaint within thirty days.  Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Iqbal, 556 U.S. at 678. "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supersedes the original complaint, Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987), and must be "complete in itself without reference to the prior or superseded pleading," Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Plaintiff's complaint, filed May 11, 2010, is dismissed for failure to state a claim upon which relief may be granted;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and
4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   **May 1, 2013**

UNITED STATES MAGISTRATE JUDGE